IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Case No. 08-13031-MFW |
| AE LIQUIDATION, INC., et al., | : | Chapter 7 |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Adv. No. 09-50265-MFW |
| _____ | : | |
| ANNETTE VARELA and JOHN J. DIMURA, | : | |
| | : | Civ. No. 14-1492-LPS |
| Appellants, | : | |
| | : | |
| v. | : | |
| | : | |
| JEOFFREY L. BURTCH, Chapter 7 Trustee, | : | |
| | : | |
| Appellee. | : | |

## MEMORANDUM ORDER

At Wilmington on this 31st day of March, 2016:

This matter coming before the Court upon Appellants' appeal of the Memorandum Opinion ("Opinion") and Order ("Order")[1] entered by The Honorable Mary F. Walrath on November 18, 2014 in the above-captioned adversary proceeding on cross-motions for summary judgment with respect to claims arising under the federal Worker Adjustment and Retraining Notification Act (the "WARN Act");

IT IS HEREBY ORDERED that, for the reasons that follow, the Order is AFFIRMED.

I.    Relevant Background

This appeal arises from the Bankruptcy Court's Order granting the Trustee's motion for summary judgment, and denying that of Appellants, based on the Bankruptcy Court's conclusion that the "unforeseeable business circumstances" exception to the WARN Act applies.

---

[1] *See Varela v. Burtch,* Adv. No. 09-50265 (MFW) (Bankr. D. Del.), D.I. (hereinafter "A.P.D.I.") 119 (Opinion), 120 (Order). The Court will cite to the Opinion as "(Op. at ___)".

The material facts of this case are undisputed.  Appellants were employed by Eclipse

Aviation Corporation ("Eclipse").  Eclipse engineered, manufactured, and sold jet aircraft through

its facilities in Albuquerque, New Mexico.  European Technology and Investment Research Center

("ETIRC") was the largest shareholder of Eclipse, and its Chairman, Roel Pieper, was also Eclipse's

Chairman and Chief Executive Officer.

Pre-petition, the business model of Eclipse failed.  By November 1, 2008, the company had

defaulted on its secured notes and its cash accounts were frozen.  (*See* D.I. 15 at A546 (Nov. 1,

2008 Minutes of the Board of Directors of Eclipse Aviation Corp.)  J. Mark Borseth, Eclipse's

Chief Financial Officer, suggested a bankruptcy filing to its Board of Directors.  The Board

considered liquidating, but decided on a going-concern sale through "stalking horse" bid

procedures.  On November 25, 2008, Eclipse filed a Chapter 11 petition with $20 million in debtor-

in-possession (DIP) financing provided by ETIRC.[2]  On the same day, Eclipse filed a motion to

approve sale procedures to govern the sale of substantially all of its assets, which attached a form of

asset purchase agreement negotiated between Eclipse and EclipseJet Aviation International, Inc., an

affiliate of ETIRC, dated November 25, 2008.  (B.D.I. 18)  On December 23, 2008, the Bankruptcy

Court entered an order approving certain bid procedures to govern the sale.  (B.D.I. 229)  On

December 29, 2008, Eclipse filed an executed Amended Asset Purchase Agreement, dated

December 22, 2008, with ETIRC as the stalking horse bidder, who represented that a Russian state-

owned bank, Vnesheconombank, would finance the sale.  (B.D.I. 239)  On January 23, 2009, the

Bankruptcy Court entered an order ("Sale Order") approving a Second Amended and Restated

Asset Purchase Agreement (the "APA") and the sale.  (B.D.I. 446, Ex. 1)

---

[2] *See In re AE Liquidation, Inc., et al.*, Case No. 08-13031 (MFW) (Bankr. D. Del.), D.I.
(hereinafter "B.D.I.") 13.

Despite its approval by the Bankruptcy Court, ETIRC's financing and the closing of the sale were delayed. On February 18, 2009, Eclipse sent an email to employees announcing a furlough:

> We are sure that you have noticed that the sale of Eclipse Aviation is taking longer than expected. The efforts of many people to finalize the sale of Eclipse to EclipseJet is still on course but slower than we all had hoped for. Even with the difficult financial markets around the world, all actions to date allow us to believe that the sale and closing of the overall process is well within reach. In spite of this optimism, we now find it prudent to take action to provide us the best possible chance of assuring a sale closing occurs.
>
> To make the company's remaining cash last as long as possible and give us the most time to complete the sale, the Board of Directors directed management to furlough essentially all of the company's employees effective today. This means you can go home and unless you are asked, you should not report to work starting tomorrow, Thursday February 19, 2009, until further notice . . .
>
> We regret the need to take this action but we ask that you see the necessity given the circumstances. You will be contacted at your home address and/or by home phone to notify you when to return to your job or to provide any additional updates.
>
> While this is unpleasant and hopefully short lived, we are very thankful for all of the ongoing support you are giving to Eclipse Aviation. We hope to have good news to report to you in the coming days.

(D.I. 15 at A609) Despite repeated assurances from ETIRC that funding was forthcoming, the sale ultimately did not close. On February 24, 2009, management sent a second message to employees:

> We are very sad to report unexpected news today. Despite the efforts of many people at EclipseJet Aviation and ETIRC to obtain necessary funding to close the purchase of the assets of Eclipse Aviation, the closing of the sale transaction has stalled and our company is out of time and money. Given the dire circumstances in today's global marketplace and the lack of additional debtor-in-possession funding, the senior secured creditors of the Company filed a motion today . . . to convert the Chapter 11 case to a Chapter 7 liquidation. This action, under the circumstances, is being supported by the directors of Eclipse.
>
> What does this mean for each employee? The furlough converted to a layoff effective Thursday, February 19, 2009. Most regrettably, you will not be paid the paycheck due on Thursday, March 5, 2009 nor is any vacation pay available. You may have certain rights to seek payment in the bankruptcy proceeding; you may receive additional information about that from the bankruptcy court.

> As it stands today, all benefits coverage will end at midnight on February 28, 2009. COBRA benefits will be available for the month of March if you wish to sign up for medical, dental and/or vision coverage. Later this week you will receive a termination package in the mail which will have information regarding all of your benefits.

(D.I. 15 at A622) The next day, on February 25, 2009, a termination benefits package was mailed to the employees. (D.I. 15 at A625) On March 5, 2009, the Bankruptcy Court converted Eclipse's case to Chapter 7 and subsequently appointed Jeoffrey L. Burtch as trustee (the "Trustee").

Appellants commenced a class action adversary proceeding on March 3, 2009, alleging a violation of the federal WARN Act.[3] On November 18, 2009, Appellants filed a motion for class certification and related relief. (A.P.D.I. 17)[4] On January 12, 2012, prior to discovery, the Trustee filed a first motion for summary judgment, asserting, *inter alia*, that the closure was caused by business circumstances that were not reasonably foreseeable at the time that any notice pursuant to the WARN Act would have been required, and Eclipse was therefore excepted from the WARN Act requirements. (A.P.D.I. 33, 34) The Trustee's first motion for summary judgment was denied by the Bankruptcy Court on August 30, 2012, based on the Bankruptcy Court's conclusion that there was a dispute of material facts regarding the Trustee's asserted "unforeseeable business circumstances" ("UBC") defense. (A.P.D.I. 49) Following discovery, on February 14, 2014, the Plaintiffs filed a motion for partial summary judgment, arguing that Eclipse could not invoke the "faltering company" defense or the UBC defense. (A.P.D.I. 88, 89) On April 24, 2014, the Trustee filed a cross-motion for summary judgment with respect to its asserted UBC defense. (A.P.D.I. 102, 103) Following briefing and oral argument, the Bankruptcy Court issued the Opinion and Order, granting the Trustee's motion for summary judgment.

---

[3] Appellants have conceded that their New York Warn Act claims are not valid because Eclipse is not an "employer" under New York's WARN regulations.

[4] The motion for class certification has been stayed, first pending the Trustee's first motion for summary judgment and then pursuant to stipulation.

II.     Parties' Contentions

Under the federal WARN Act, an employer cannot order a plant closing or mass layoff

without giving 60 days' written notice to affected employees. *See* 29 U.S.C. § 2102(a)(1).  It is

undisputed that Eclipse did not provide employees with notice 60 days prior to termination.  Eclipse

sent an email announcing a furlough on February 18, 2009, and a second email on February 24,

retroactively converting the furlough to a layoff.  Any notice, therefore, was given after the fact.

The Trustee argues, however, that the UBC exception to the WARN Act applies.  The statute

provides that "[a]n employer may order a plant closing or mass layoff before the conclusion of the

60-day period if the closing or mass layoff is caused by business circumstances that were not

reasonably foreseeable as of the time that notice would have been required."  29 U.S.C.

§ 2102(b)(2)(A).  To invoke this defense, it is the employer's burden to show that the claimed

circumstance was unforeseeable and the layoffs were caused by that circumstance.  *See Gross v.*

*Hale-Halsell Co.*, 554 F.3d 870, 875 (10th Cir. 2009).  To qualify for this defense, an employer is

still required to give as much notice as is practicable and, at that time, provide a brief statement

explaining the reason for reducing the notification period.  *See* 29 U.S.C. § 2102(b)(3).

Appellants argue that the Bankruptcy Court's holding that that Eclipse is entitled to the UBC

defense is reversible error for several reasons.  First, Appellants argue that, as a gating issue,

Eclipse cannot invoke the UBC defense because Eclipse failed to meet the statutory requirement of

giving as much notice as practicable and that the notice that was given to employees did not contain

the "brief statement" required by the statute.  (*See* D.I. 14 at 3)  Second, Appellants argue that even

if the UBC defense could be invoked, the alleged unforeseeable event – the failure of the sale – did

not cause the terminations because the employees were subject to termination whether the sale

closed or not under the express terms of the APA.  (*See id.* at 4)  Finally, Appellants argue that

Eclipse cannot invoke the UBC defense because the failure of the sale was foreseeable as of January

30, if not well before, when ETIRC failed to close the sale and never proposed a new date for closing. At that point, Appellants argue, Eclipse was required to give notice that employees would be terminated unless the sale closing occurred immediately, due to Eclipse's dwindling funds. Having kept silent until the case converted to Chapter 7, Appellants argue that they should be entitled, at least, to partial summary judgment for the final 25 days of the 60-day notice period, i.e., between January 30 and the February 25 notice to employees. (*See id.*)

The Trustee counters that Eclipse may invoke the UBC exception to the WARN Act's 60-day notice requirement because ETIRC's failure to fund the sale pursuant to the APA constituted an unforeseeable business circumstance. (*See* D.I. 18 at 2) The Trustee argues that no one could have reasonably foreseen the failure of the sale 60 days before the layoff, in late December. The Trustee argues that the UBC defense does not require the employer to issue a WARN Notice anytime a layoff is merely possible; rather, the employer need only exercise commercially reasonable judgment as to what is probable. The Trustee further contends that the failure of the sale was the actual cause of the layoffs, and that Eclipse was not required to give its employees advance notice of the layoffs because such notice was not practicable under the circumstances. (*See id.*) Finally, in the Trustee's view, the three communications, read together, were based on the best information available to Eclipse and were adequate to meet the statutory requirements of the WARN Act. (*See id.*)

III.    Standard of Review

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" and discretionary jurisdiction to hear appeals "from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1), (3). In reviewing a bankruptcy court's grant of summary judgment, this court applies a plenary, or *de novo*, standard of review to legal

determinations.  *See Biase v. Congress Fin. Corp. (In re Tops Appliance City, Inc.)*, 372 F.3d 510,

513 (3d Cir. 2004); *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80

(3d Cir. 1999).  Under that standard, courts look to whether the record demonstrates "a genuine

issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of

law." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  A disputed fact is "material" if it

would affect the outcome of the suit as determined by the substantive law.  *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Courts must view the facts in the light most favorable to the

nonmoving party and draw all inferences in that party's favor.  *See Gray v. York Newspapers, Inc.*,

957 F.2d 1070, 1078 (3d Cir. 1992).

IV.   Discussion

        The purpose of the WARN Act is to extend:

> protection to workers, their families and communities by requiring employers to
> provide notification 60 calendar days in advance of plant closings and mass
> layoffs.  Advance notice provides workers and their families some transition time
> to adjust to the prospective loss of employment, to seek and obtain alternative
> jobs and, if necessary, to enter skill training or retraining that will allow these
> workers to successfully compete in the job market.

20 C.F.R. § 639.1.  The full 60-day notice period is not required if the closing is "caused by

business circumstances that were not reasonably foreseeable as of the time that notice would have

been required." 29 U.S.C. § 2102(b)(2)(A).  In order to qualify for the UBC exception, the

defendant must prove two elements: (A) that the circumstances complained of were unforeseeable;

and (B) that the circumstances complained of actually caused the mass layoff or plant shutdown.

*See Calloway v. Caraco Pharmaceutical Laboratories, Ltd.*, 2015 WL 5023560, *6 (6th Cir. Aug.

26, 2015).  The burden is on the employer to show that the statutory exception applies.  20 C.F.R. §

639.9; *see In re Advanced Accessory Systems, LLC*, 443 B.R. 756, 766 (Bankr. E.D. Mich. 2011)

(holding that former employer met its burden of proof that UBC exception applied).

The UBC exception is not narrowly construed. *See In re Jevic Holding Corp.,* 496 B.R.

151, 163 n.36 (Bankr. D. Del. 2013) (noting that while Department of Labor requires "faltering

company" exception be narrowly construed, there is no such requirement for UBC exception); *see*

*also* 54 Fed. Reg. 16,061 (1996) ("The Department has reviewed the legislative history and agrees it

may not [be] appropriate to say that the unforeseeable business circumstances . . . exception[]

should be narrowly construed."). Courts evaluate the UBC exception objectively, at the time the

decisions were made, and not with the benefit of 20/20 hindsight. *See Jevic,* 496 B.R. at 161;

*Watson v. Mich. Indus. Holdings, Inc.,* 311 F.3d 760, 764 (6th Cir. 2002) ("In making this

determination, a reviewing court must be careful to avoid analysis by hindsight . . .").  Notably:

> WARN was not intended to force financially fragile, yet economically viable,
> employers to provide WARN notice and close its doors when there is a ***possibility***
> that the business may fail at some undetermined time in the future.  Such a reading
> of the Act would force many employers to lay off their employees prematurely,
> harming precisely those individuals WARN attempts to protect.  A company that
> is struggling to survive financially may be able to continue on for years and it was
> not Congress's intent to force such a company to close its doors to comply with
> WARN's notice requirement.

*Watson,* 311 F.3d at 765.  The WARN Act allows leeway for a company's exercise of reasonable

business judgment, and the regulations "are intended to encourage employers to take all reasonable

actions to preserve the company and the jobs." *Jevic,* 496 B.R. at 161 (quoting *Angles v. Flexible*

*Flyer Liquidating Trust (In re Flexible Flyer Liquidating Trust),* 2013 WL 586823, at *4 (5th Cir.

Feb. 11, 2013)).

Even where the UBC exception applies, however, the employer must still give as much

notice as practicable, and that notice must contain a brief statement of the basis for reducing the

notification period. 29 U.S.C. § 2102(b)(3).  The brief statement must set forth "reasonably

specific" facts that make the exception applicable, and mere generalized statements will not suffice.

*See Alarcon v. Keller Indus., Inc.,* 27 F.3d 386, 389-90 (9th Cir. 1994).  The notice must be based on

the best information available to the employer at the time the notice is served. 20 C.F.R. § 639.7.

8

The delivery of the notice must be designed to ensure its receipt. *Id.* at § 639.8. The Court may also consider whether multiple communications to employees, read together, satisfy the statute. *See Kalwaytis v. Preferred Meal Systems, Inc.*, 78 F.3d 117, 122 (3d Cir. 1996).

A. Foreseeability

To qualify for the UBC defense, the Trustee must first establish that the business circumstance that caused the layoff was unforeseeable. *See Calloway*, 2015 WL 5023560 at *6. The regulations promulgated by the United States Department of Labor concerning the WARN Act do not offer examples of circumstances that are *per se* unforeseeable. Rather, the Department of Labor indicated that the propriety of utilizing the exception in any particular scenario involves a highly factual inquiry to be assessed on a case-by-case basis. *See Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056, 1060 (8th Cir. 1996). The regulations explain that "[a]n important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control." 20 C.F.R. § 639.9(b)(1).

The test is an objective one: "When determining whether a closing was caused by unforeseeable business circumstances, we evaluate whether a 'similarly situated employer' in the exercise of commercially reasonable business judgment would have foreseen the closing." *Hotel Employees and Rest. Employees Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 186 (3d Cir. 1999) (quoting 20 C.F.R. § 639.9(b)(2)). Importantly, "it is the probability of occurrence that makes a business circumstance reasonably foreseeable, rather than the mere possibility of such a circumstance." *Watson*, 311 F.3d at 765 (internal quotations and citations omitted); *see also Jevic*, 496 B.R. at 160-61 ("The case law makes clear that the determining factor on the foreseeability issue is whether the triggering event was probable or possible.").

Appellants argued below that the ETIRC's failure to close on the sale of Eclipse was reasonably foreseeable 60 days before employees received notice because ETIRC had been unable to obtain financing from the Russian government for an earlier project; the commitment letters that ETIRC submitted did not appear to be binding; and no other qualified purchasers had come forward in the sale process. The Bankruptcy Court disagreed, finding that ETIRC's failure to close on the sale of Eclipse was not reasonably foreseeable on December 28, which was 60 days prior to the date employees received notice of the termination. (*See* Op. at 10)  In reaching this conclusion, the Bankruptcy Court noted that at the time of the sale hearing on January 16, Pieper testified that ETIRC had lined-up the necessary financing commitments and that, aside from entry of a sale order, there were no contingencies in connection with the sale. (*See* B.D.I. 448, 1/16/09 Hr'g. Tr. at 112) On February 3, Pieper and an ETIRC officer, Daniel Bolotin, told Eclipse's Board that there was a high likelihood that funding would be approved by the Russian government in the coming days. (*See* A.P.D.I. 90 at A204)  On February 16, Pieper and Bolotin confirmed that Russian Prime Minister Putin had given final approval for the financing and that no additional approvals were necessary. (*See* A.P.D.I. 90 at A213)  The Bankruptcy Court found that ETIRC made many other such representations during the 60-day period, and ETIRC itself had committed $20 million in DIP financing to Eclipse in anticipation of the sale closing. (*See* Op. at 11; B.D.I. 230)  Based on these findings, the Bankruptcy Court concluded that the Trustee had established that the failure of the sale was not reasonably foreseeable on December 28. (*See* Op. at 12)

On appeal, Appellants argue that "the Bankruptcy Court erred in finding that the buyer's inability to close was unforeseeable as matter of law in December and thereafter – indeed it was a fact-on-the-ground weeks before the layoff." (*See* D.I. 14 at 26)  Appellants assert that "Eclipse knew the odds of completing the sale were low" and that whatever expectation that Eclipse may have had of the sale closing before it ran out of money, that expectation was shattered when ETIRC

failed to close the sale by January 30. (*See id.* at 4, 26)  Appellants argue that the Bankruptcy Court

did not explain why failure was unforeseeable after January 30, and its grant of summary judgment

on that issue was erroneous. (*See id.* at 27)

In support of its position, the Trustee argues that no one could have foreseen the failure of

the sale in late December. (*See* D.I. 18 at 4)  At that time, the parties had entered into a form of the

APA, and the sale closing was contingent only upon Bankruptcy Court approval of the APA and

entry of the Sale Order. (*See* D.I. 15 at A290 (APA § 8.2(d)))  The Bankruptcy Court did not

approve the bidding procedures until December 23, and scheduled the sale hearing for January 16,

2009.  The sale hearing was continued to January 20, and the Sale Order was entered on January 23.

Thus, the Trustee argues that the failure of the sale was not reasonably foreseeable in late

December.  Nor was the sale's failure reasonably foreseeable when ETIRC failed to close as

expected on January 30, as the APA provided a time cushion for closing through at least February

28. (*See* D.I. 15 at A405)  Contrary to Appellants' assertion that failure of the sale was not merely a

possibility but an actuality on January 30, the Trustee argues that it would not have been

commercially prudent for Eclipse to walk away from a court-approved sale worth more than $185

million to creditors merely because of a delay in closing. (*See* D.I. 18 at 19)  The Trustee adds that

Eclipse received repeated assurances from ETIRC after January 30 that the funds were forthcoming

and the sale would close. (*See id.* at 15-17)  In light of these assurances, the Trustee contends that

failure of the sale did not become reasonably foreseeable until after the employee furlough on

February 19, when – on February 24 – the secured noteholders moved to convert the Chapter 11

case to Chapter 7, which would end Eclipse's ability to utilize cash collateral. (*See id.* at 19)

The touchstone inquiry here is whether a similarly situated employer in the exercise of

commercially reasonable business judgment would have foreseen the need for the mass layoffs.  *See*

*Elsinore*, 173 F.3d at 186 (citing 20 C.F.R. § 639.9(b)(2)).  The employer must exercise such

commercially reasonable judgment as would a similarly situated employer in predicting the demands of a particular market.  20 C.F.R. § 639.9(b)(2).  As noted by the Bankruptcy Court, "[i]n determining whether a crippling business circumstance is foreseeable, we must bear in mind that it is the probability of the occurrence that makes a business circumstance reasonably foreseeable, rather than the mere possibility of such a circumstance."  (Op. at 11-12 (quoting *Roquet v. Arthur Anderson LLP*, 398 F.3d 585, 589 (7th Cir. 2005) (internal quotations omitted)))

Based on a review of the record, and applying the summary judgment standard, the Court agrees that ETIRC's failure to close on the sale of Eclipse was not "probable" in late December 2008, 60 days prior to the date the employees received notice of the layoff.  The record reflects that following Eclipse's Chapter 11 filing, ETIRC had committed $20 million in DIP financing to Eclipse as the company attempted to sell its business on a going concern basis.  (*See* B.D.I. 230) The parties had entered into a binding APA, court approval of which was still pending.  The Court cannot agree that a similarly-situated employer in the exercise of commercially reasonable business judgment would have foreseen a failure of the sale closing at that time.  Appellants argue the failure of the sale was reasonably foreseeable well before the January 30 closing date and was a "fact-on-the-ground weeks before the layoff."  (D.I. 14 at 26)  However, Pieper testified under oath at the January sale hearing that EclipseJet had lined-up financing commitments sufficient to execute its business plan and that there were no financing contingencies in connection with the purchase of the business.  (*See* B.D.I. 448 (1/16/09 Hr'g. Tr. at 112))  EclipseJet had also filed its business application to operate in New York and provided a post-closing budget.  (*See* A.P.D.I. 104, Ex. 1)

Nor did the failure of the sale become "probable" when the sale failed to close on January 30.  Appellants argue that while "[t]he sale's failure might arguably have been unforeseeable in December, once the closing failed on January 30, it became the actuality."  (D.I. 14 at 26-27) Again, the determining factor on foreseeability is whether the triggering event was probable, not

merely possible. *See Jevic*, 496 B.R. at 160-61.  The WARN Act does not require the employer to issue a notice any time a mass layoff is merely possible.  While the failure of the sale was certainly possible upon ETIRC's failure to close on the projected closing date, ETIRC provided continuous assurances to Eclipse and other parties in interest that funding was secured and forthcoming and that closing of the sale was imminent.  (*See* Op. at 11-12)  Indeed, the Board was assured as late as February 16 – two days before the email announcing the employee furlough – that Russian Prime Minister Putin had given final approval for the financing and that no additional approvals were necessary.  (*See* A.P.D.I. 90 at A213)  Based on this record, applying the summary judgment standard, the Court concludes that a similarly-situated employer in the exercise of commercially reasonable business judgment would not have foreseen the need for mass layoffs on January 30.

Importantly, the failure of the sale did not need to be "out of the blue" for it to be considered "sudden, dramatic, or unexpected." *See Jevic*, 496 B.R. at 161.  Although Eclipse was financially failing and the potential for layoffs was well-known by management, the APA provided that the sale could close as late as February 28 – providing a one-month time cushion after entry of the Sale Order (*see* D.I. 15 at A405) – and Eclipse's Board was assured that "that the Company had sufficient cash to make payroll and pay invoices as they come due through the week ending Friday, February 20, 2009.  (*See* D.I. 14 at 12; D.I. 15 at A600-01)  In light of the repeated assurances that funding of the sale was imminent, allowing extra time for the purchaser to close was within Eclipse's reasonable business judgment and consistent with taking "all reasonable actions to preserve the company and the jobs." *Jevic*, 496 B.R. at 161; *Flexible Flyer*, 2013 WL 586823, at *4.  Eclipse's reaction to the failure to close on January 30 was consistent with that of "other reasonable employers within its own market." *See Roquet*, 398 F.3d at 588.

In support of their contrary position, Appellants cite the *MRC* case.  (*See* D.I. 14 at 27) (citing *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. MRC Indus. Grp.,*

*Inc.*, 541 F. Supp. 2d 902 (E.D. Mich. 2008) ("*MRC*"). In *MRC*, a proposed buyer announced it would not have financing to purchase a business as a going concern, and the seller terminated its employees without notice. *See MRC,* 541 F. Supp. 2d at 910. The *MRC* court rejected the defendants' summary judgment argument that the company was entitled to the UBC defense, noting that where "the pitfalls associated with a sale" are "neither hidden nor imagined" the fact that the sale does not come to "fruition cannot be characterized, as a matter of law, as unforeseen, unexpected, or sudden." *Id.* at 911. Appellants argue that the pitfalls of Eclipse's sale to ETIRC were obvious as well because ETIRC made empty promises regarding prior transactions, funding for the sale depended on the approval of the Russian state-owned bank, Eclipse was aware of the global financial meltdown that had just occurred, and Eclipse had contracted around the possibility that the sale may fail in the APA. (*See* D.I. 14 at 25, 28)

The Court is not persuaded by Appellants' reliance on the *MRC* case. Seeking summary judgment on the UBC defense, the employer in that case simply argued that the purchaser intended to operate post-sale closing, and it was not reasonably foreseeable that the sale would fall through. *See MRC* 541 F. Supp. 2d at 910. The *MRC* court found, however, that the employer's characterization of events was "undermined by the record." *Id.* at 911. While the employer in *MRC* had selected a stalking horse purchaser, the court noted that the parties had trouble negotiating an asset purchase agreement, and the purchaser would only agree to an unusually low deposit. *See id.* Unlike this case, there was no binding asset purchase agreement or unconditional promise to close the sale. The *MRC* court further noted that at the same time the parties were pursuing the sale, the employer was simultaneously planning an orderly wind down of operations. *See id.* In denying summary judgment on the UBC defense, the *MRC* court further noted that even after the sale failed to close, and the employer sold its assets to a liquidator, the employer did not give notice to its employees as required under the WARN Act. *See id.* Here, by contrast, Eclipse had entered into a

binding APA upon reliance on a stalking horse purchaser's representations that the sale was not

subject to any financing contingencies. The Court finds that *MRC* involves different facts and does

not support Appellants' position that ETIRC's failure to close the sale was reasonably foreseeable.

The Court finds no genuine issue of material fact with respect to foreseeability and no error

in the Bankruptcy Court's conclusion that the Trustee has carried the burden of establishing that the

business circumstances that triggered the layoff were not reasonably foreseeable at the time that

notice was required.[5]

B. Causation

In addition to establishing that the failure of the sale was unforeseeable, the Trustee also has

the burden of establishing that that the circumstances complained of actually caused the mass

layoff. *See Calloway,* 2015 WL 5023560, at *6. In granting the Trustee's cross-motion for

summary judgment, the Bankruptcy Court found that "ETIRC's failure to consummate the sale was

the cause of the termination by Eclipse of its workforce." (*See* Op. at 13) In reaching this

conclusion, the Bankruptcy Court rejected Appellants' argument that the termination of employees

would have taken place regardless of whether ETIRC had consummated the sale because ETIRC

was not obligated under the APA to retain Eclipse's employees. (*See id*. at 12) The Bankruptcy

Court found that Eclipse sought to sell its business as a going concern and that Eclipse's work force

was highly skilled and integral to the business operations. (*See id*. at 13) The Bankruptcy Court

further found that two executive management committee members, Mark Borseth and Michael

McConnell, testified that they believed ETIRC intended to retain Eclipse's workforce post-closing.

---

[5] Because the Court finds no error in the Bankruptcy Court's conclusion that the business
circumstances that caused the layoff were not reasonably foreseeable at the time that notice would
have been required under the WARN Act, the Court does not reach the Bankruptcy Court's
independent holding that, even if the layoffs were reasonably foreseeable, Eclipse was in no
position to predict a specific date or 14-day period when the sale would fail and the layoffs would
occur. (*See* Op. at 12)

(*See* A.P.D.I. 104, Ex. 3 at 68:19-23; Ex. 2 at 84:6-12)  The Bankruptcy Court noted that it had

approved the sale in part because of the expectation that the employees would keep their jobs.  (*See*

D.I. 450 at 106)  Additionally, the buyer's contemplated annual budget for the post-sale entity was

$125 to $150 million, which also supported Eclipse's belief that ETIRC was committed to

continuing operations.  (*See* D.I. 448 (1/16/09 Hr'g. Tr. at 107-08))  Although the APA stated that

ETIRC had no hiring obligations, the Bankruptcy Court noted that such terms are boilerplate in

going-concern sales and merely allowed the buyer to pick which employees to retain.  (*See* Op. at

13)  For these reasons, the Bankruptcy Court rejected Appellants' argument under the APA and

concluded that ETIRC's failure to consummate the sale was the cause of the termination.  (*See id.*)

Appellants argue that the Bankruptcy Court should not have granted summary judgment

because there is a dispute of fact as to whether ETIRC would have hired Eclipse's employees post-

closing.  (*See* D.I. 14 at 25-26)  Appellants argue that the APA specifically absolved ETIRC of any

responsibility to retain Eclipse's employees.  (*See id.* at 25)

The Court is not persuaded by Appellants' arguments relating to the APA.  The record and

testimony support the Bankruptcy Court's conclusion that Eclipse reasonably believed that the

employees would be retained for operations of the business and that the contemplated budget

provided for the same.  Additionally, the APA stated that a condition of the closing was that the

"Sellers shall be operating the Business as a going concern on a basis consistent with the Budget

and otherwise consistent with past practice or acting as a debtor-in-possession in a Chapter 11

bankruptcy case."  (D.I. 15 at A290)  As noted by the Trustee, the terms of the APA required

Eclipse to use commercially reasonable efforts to:

> maintain the business organization of the Business intact, including its agents,
> ***employees***, consultants, and independent contractors, . . . ***preserve the goodwill***
> of the manufacturers, suppliers, contractors, licensors, ***employees***, customers
> distributors, and others . . .  In connection therewith, no Seller shall (1) offer
> employment for any period on or after the Closing Date to any ***employee*** or agent
> of the Business ***unless Buyer has determined not to make an offer of***

16

> *employment* in accordance with the terms set forth herein to such employee or
> agent; or (2) *otherwise attempt to persuade any such employee or agent to*
> *terminate his or her relationship with the Business.*

D.I. 15 at A282 (emphasis added).  Thus, under the APA, Eclipse was under an affirmative

obligation to retain employees and maintain the status quo through the sale's closing, which further

supports Eclipse's belief that ETIRC intended to maintain the employees post-closing, and that

laying off employees would have frustrated the purchaser's business plan.  The APA's boilerplate

language addresses a buyer's typical litigation concerns over successor liability and third-party

beneficiary claims, and the fact that the APA did not provide for retention of the employees does

not create a dispute of material fact concerning the cause of the layoff.  The record does not support

Appellants' argument that termination of employees would have taken place regardless of whether

ETIRC had consummated the sale simply because ETIRC was not obligated to retain Eclipse's

employees under the APA.

Appellants further argue that ETIRC's failure to consummate the sale did not cause the

layoff because, for the UBC defense to apply, the circumstances that cause the layoff "must relate to

the economic conditions of operating the business itself, rather than conditions encountered in the

sale of a business."  (D.I. 14 at 24 (citing *Snider v. Commercial Fin. Servs., Inc.*, 288 B.R. 890, 896

(N.D. Okla. 2002)).  In support of this argument, Appellants rely on the *Snider* case, where, as here,

an employer was attempting to sell its business.  *See* 288 B.R. at 894.  In *Snider,* the employer's

("CFS") advisor first recommended sale of the business as a going concern but later changed its

advice because CFS's "bloated workforce was a deterrent to generating interest" among prospective

buyers.  *See id.*  This change of advice prompted CFS to conduct a mass layoff without affording its

employees the 60-day notice required by the WARN Act.  *See id.*  The bankruptcy court in that case

held that the changed advice was a business circumstance that was not reasonably foreseeable, but

the district court reversed, holding that "the changed advice did not, by its very nature, necessitate or 'cause' the layoff," thus CFS could not avail itself of the UBC defense. *See id.* at 896.

In *dicta*, the *Snider* court noted that even if the changed advice had caused the layoff, there was a question as to whether the UBC defense applied to the process of selling a business, or whether it was "confined to circumstances affecting the conduct of the underlying business." *Id.* at 896. Based upon a review of other cases, the *Snider* court was "not persuaded that the defense should be properly applied to the sale of CFS." *Id.* However, in discussing the *Burnsides* case – a case which applied the UBC defense to the failed sale of a business – the *Snider* court found that case "markedly different" because the employer in *Burnsides* had a signed letter of intent and reasonably believed that the purchaser would continue to employ the employees. *See id.* at 897 (discussing *Burnsides v. MJ Optical, Inc.*, 128 F.3d 700, 703 (8th Cir. 1997)).  In contrast to *Burnsides*, CFS's sales process was a "speculative scenario" with "only a sales *process* in place that *might* result in a sale . . . [and] hopefully identify a *potential* buyer who *might* retain some employees." *Snider*, 288 B.R. at 897 (emphasis in original).

*Snider* is cited by Appellants in support of their argument that the UBC defense cannot apply to the failure of the sale. (*See* D.I. 14 at 24)  But this case, like the *Burnsides* case distinguished by the *Snider* court, involved very different facts than *Snider*.  Here, a stalking horse bidder had been identified, executed a binding APA, and made repeated assurances and representations as to its ability to fund the sale, all providing Eclipse a reasonable belief that the purchaser intended to continue operations and retain Eclipse's employees post-closing.  Here, then, the record, when reviewed under the summary judgment standard, establishes that the failure of ETIRC to close the sale as required under the APA caused the layoff.  The Court rejects Appellants' argument that to qualify for the UBC defense, the cause of a layoff is necessarily confined to circumstances affecting the conduct of the underlying business failure or that the UBC defense

cannot ever be applied in the context of a failed business sale. The Court finds no genuine issue of material fact with respect to causation and no error in the Bankruptcy Court's conclusion that ETIRC's failure to consummate the sale was the cause of the layoff. (*See* Op. at 13)

C. Sufficiency of Notice

An employer seeking to avail itself of the UBC defense must also satisfy the UBC's notice requirement by "giv[ing] as much notice as is practicable" and "at that time . . . giv[ing] a brief statement of the basis for reducing the notification period." *See* 29 U.S.C. § 2102(b)(3). Reviewing this record under the summary judgment standard, the Court finds no genuine issue of material fact that Eclipse gave as much notice as practicable under the circumstances and that the notice satisfied the statutory requirements.

1. Notice After the Fact

In granting summary judgment on Eclipse's UBC defense, the Bankruptcy Court found that Eclipse gave as much notice of the layoff as was practicable under the circumstances. (*See* Op. at 13) In reaching this conclusion, the Bankruptcy Court found that, on February 24, Eclipse's secured lenders moved to convert to a Chapter 7 liquidation, and only then was it clear that there would be no going-concern sale. (*See id.*) That same evening, management emailed employees notice of the layoff; they mailed termination packages the following day. (*See id.* at 13-14) The Bankruptcy Court concluded that such notice constituted as much notice as was practicable under the circumstances. (*See id.* at 13)

Appellants argue that where multiple notices are considered together, the date of the last notice is effective, and here, the termination package was mailed on February 25 – 6 days after the effective date of the termination on February 19. Appellants argue that after-the-fact notice is not enough notice to satisfy the WARN Act and cite several cases in support of this argument. (*See* D.I. 14 at 17-18) However, the Department of Labor regulations clearly contemplate that, in certain

circumstances, after-the-fact notice may be as much notice as practicable. *See* 20 C.F.R. § 639.9

("If one of the exceptions [to the WARN Act] is applicable, the employer must give as much notice

as is practicable . . . and this may, in some circumstances, be notice after the fact."). The Third

Circuit has noted that the 60-day notice period "is reduced or eliminated if the closing or mass

layoff is caused by business circumstances that were not reasonably foreseeable as of the time that

the notice would have been required." *Elsinore*, 173 F.3d at 180 (internal quotations omitted).

Here, it only became clear to Eclipse that there would be no going-concern sale on February

24 – the day the secured lenders filed the motion to convert the bankruptcy cases to Chapter 7

liquidation, terminating Eclipse's ability to utilize cash collateral and pay operating expenses. At

that time, the cessation of Eclipse's operations went from merely "possible" to "probable." On the

same day that the secured lenders moved to convert the case, Eclipse contacted employees by email

regarding the layoff and then it mailed termination packages the very next day. Reviewing this

record under the summary judgment standard, the Court finds no genuine issue of material fact that

Eclipse gave its employees as much notice as practicable under the circumstances, even if it was

after the fact.

2. Content of the Notice

The Bankruptcy Court further found that upon consideration of the notices together, Eclipse

had met the content requirements of the WARN Act: "From these communications, an employee

would understand that she had been terminated and why she did not receive earlier notice." (*See*

Op. at 14-15) A WARN notice must contain a "brief statement" that explains the basis for reducing

the 60-day notice period by setting forth specific facts explaining the reason for the reduced period

of notice. *See In re Tweeter OPCO, LLC*, 453 B.R. 534, 547 (Bankr. D. Del. 2011) (citing *Grimmer*

*v. Lord Day & Lord*, 937 F. Supp. 255, 257 (S.D.N.Y. 1996)). Generalized statements will not

suffice; rather, the presence of "reasonably specific facts" is required. *See Alarcon*, 27 F.3d at 389-

90. These specific facts must make an exception to the statutory notice period applicable, and explain to the affected workers why the full 60 day notice was not given. *See id.* In addition to the brief statement, a WARN Act notice must also tell employees: (1) whether the action will be permanent or temporary, (2) the expected date when the layoff will begin and when the individual will be separated, (3) whether "bumping rights" exist,[6] and (4) the name and telephone number of a company official who can be contacted for further information. *See* 20 C.F.R. § 639.7(d).

Appellants argue that the piecemeal communications sent by Eclipse do not satisfy the WARN Act's "bright line requirement of a single, complete notice." (D.I. 14 at 18)  However, the Third Circuit has allowed that multiple communications to employees, read together, may satisfy the statute. *See Kalwaytis*, 78 F.3d at 122 ("Giving a reasonably pragmatic interpretation of the two letters, we conclude that, read together, they do meet the statutory requirements of notice.").

Appellants further argue that none of the three communications sent to Eclipse's employees contained the brief statement explaining why a shortened notice period was required or why earlier notice of the layoff had not been given. (*See* D.I. 14 at 18)  Congress intended that the "brief statement" describing the basis for the shortened notice be "something more than a citation to the statute or a conclusory statement summarizing the statutory provision." *Jevic*, 496 B.R. at 158 (citing *Tweeter OPCO, LLC*, 453 B.R. at 547).  The February 18 email states that there will be a furlough because efforts to finalize a sale have been unexpectedly delayed, and the February 24 email provides specific facts regarding why notice had not been given earlier. (*See* D.I. 15 at A609, A622)  The February 24 email states that "the closing of the sale transaction has stalled and our company is out of time and money," that given "the lack of additional debtor-in-possession funding, the senior secured creditors of the Company filed a motion today . . . to convert the Chapter 11 case

---

[6] An employee has a "bumping right" where the employee has the ability to use his or her seniority to remain employed by displacing another employee from his or her job.  Bumping rights are not applicable to this case.

to a Chapter 7 liquidation," and that this action "is being supported by the directors of Eclipse." (D.I. 15 at A622)

These notices together set forth sufficiently specific facts to explain why Eclipse was providing shortened notice: the sale closing was unexpectedly delayed, the company was unable to locate additional funding to pursue the sale, and the company's secured lenders had filed a motion to convert to a Chapter 7 liquidation.  This information is sufficient to satisfy the "brief statement" requirement of the statute.  Eclipse did not simply quote the statute, but instead provided employees with some explanation, albeit brief, for the short notice and for their termination.  *See e.g., Jevic*, 496 B.R. at 159 (finding that brief explanation for shortened notice and termination can satisfy "brief statement" requirement).  The February 24 e-mail went on to state that these actions meant that "[t]he furlough converted to a layoff effective Thursday, February 19, 2009" and that "you will not be paid the paycheck due on Thursday, March 5, 2009 nor is any vacation pay available."  (D.I. 15 at A622)  This was followed by the February 25 termination package, which informed the employees that they had "been laid off effective February 19, 2009."  (D.I. 15 at A625)  The termination packages were sent to employees' home addresses and contained a letter specifying a number to call with questions.  (*See id.*)

Reviewing this record under the summary judgment standard, the Court finds no genuine issue of material fact that these communications, considered together, contain the information required by the statute.

### 3.   Delivery of the Notice

The Bankruptcy Court further found that Eclipse had met the delivery requirements under the WARN Act.  (*See* Op. at 15)  The regulations provide: "Any reasonable method of delivery to the [employees] which is designed to ensure receipt . . . is acceptable (*e.g.*, first class mail)."  20 C.F.R § 639.8.  The February 18 and February 24 notices were sent to employees' workplace

emails, and the February 25 termination package was sent to employees' home addresses. The Bankruptcy Court concluded that because Eclipse had both emailed employees and sent notice to their home addresses, delivery was proper. (*See* Op. at 15)  The Court need not determine whether, on its own, a message sent to the workplace email of a furloughed employee satisfies the WARN Act's delivery requirements.  Reviewing this record under the summary judgment standard, the Court finds no genuine issue of material fact that the method of delivery was reasonable and designed to ensure receipt.

V.      Conclusion

For the reasons set forth above, the Bankruptcy Court's Opinion and Order are AFFIRMED. The Clerk of Court is directed to CLOSE this case.

HON. LEONARD P. STARK
UNITED STATES DISTRICT COURT